IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| B&D INVESTMENT GROUP, LLC – 8507-8527 S. 88TH AVENUE SERIES,<br><br>Plaintiff,<br><br>v.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>Defendant. | No. 20-cv-03299<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff B&D Investment Group, LLC – 8507-8527 S. 88th Avenue Series (B&D) owns a commercial building which was damaged by hail. B&D submitted a claim to its insurer, defendant Mid-Century Insurance Company (Mid-Century), but the parties disagreed as to the damage and B&D requested an appraisal of the damage, which Mid-Century denied. B&D filed a two-count Complaint seeking a declaratory judgment compelling the parties to proceed with an appraisal (Count I) and seeking damages for breach of contract (Count II). R. 1, Compl.[1] B&D now moves for a judgment on the pleadings on Count I, requesting that the Court enter an order: (1) compelling and requiring the parties to proceed with an appraisal to determine the amount of hail loss to the building, and (2) staying the case pending the outcome of the appraisal. R. 19, Mot. JP. For the reasons that follow, the Court grants B&D's motion.

---

[1] Citations to the docket are indicated by "R" followed by the docket number or filing name, and where necessary, a page or paragraph citation.

**Background**

B&D is the owner of a commercial building in Justice, Illinois (the Property). Compl. ¶ 1. Mid-Century issued a property insurance policy to B&D effective May 29, 2018 through May 29, 2019 (the Policy). *Id.* ¶ 6. Under the Policy, Mid-City insured B&D against direct physical loss of or damage to the Property caused by or resulting from hail. *Id.* ¶ 7. On May 27, 2019, the Property was damaged by hail. *Id.* ¶ 8. B&D submitted a claim for hail damage to the Property. *Id.* ¶ 9. Mid-Century found there was hail damage to metal vents on the roof of the Property and estimated the repair costs to be $4,271.95. *Id.* ¶ 10; R. 17, Answer ¶ 10. Mid-Century found no hail damage to the roof itself. Compl. ¶ 11. B&D disagreed with that assessment and insisted that there was additional damage to the Property, specifically the roof. *Id.*; Compl. Exh. C. As such, B&D made a made a written demand to Mid-Century for an appraisal regarding the hail loss pursuant to the Policy's Appraisal provision. *Id.* ¶ 13. Mid-Century rejected B&D's appraisal demand, claiming in a letter that there was no disagreement about the loss amount. *Id.* ¶ 14; *id.*, Exh. E. Mid-Century found that the condition of the roof was due to wear and tear and therefore constituted an excluded cause under the Policy. Answer ¶¶ 24–25.

B&D subsequently filed a two-count complaint against Mid-Century, which Mid-Century has answered. B&D now moves for judgment on the pleadings on Count I, requesting a declaratory judgment based on the Appraisal provision of the insurance policy to compel an appraisal to determine the amount of the hail loss to the Property. Mot. J.P.

**Standard of Review**

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed. "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). A district court is confined to matters in the pleadings and must consider the pleadings in the light most favorable to the non-moving party. *Id.* Pleadings include "the complaint, the answer, and any accompanying written instruments attached as exhibits." *Rube v. PartnerRe Ireland Ins. DAC*, 470 F. Supp. 3d 829, 943 (N.D. Ill. 2020) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)).

**Analysis**

In diversity cases, such as this one, federal courts apply state substantive law. *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). Issues regarding the interpretation of an insurance policy are substantive. *Id.* Because neither party disputes that Illinois substantive law applies, the Court applies Illinois law. *See Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 445 (7th Cir. 2018) ("When sitting in diversity, we apply state substantive law. We will not address a conflict of law issue unless there is a dispute as to which state's law applies. If neither party disputes the issue, we will apply the law of the state in which the federal court sits.") (internal citations omitted). Under Illinois law, an insurance policy is a contract and the standard rules of contract

interpretation apply—the "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777–78 (7th Cir. 2015) (internal quotation and citation omitted). "[I]f the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010) (internal quotation and citation omitted). However, a policy provision is not ambiguous solely because the parties disagree about its interpretation. *Founders Ins. Co. v. Munoz*, 930 N.E. 2d 999, 1004 (Ill. 2010). Additionally, an appraisal clause is considered analogous to an arbitration clause and therefore is enforceable by the Court. *Lundy v. Farmers Grp., Inc.*, 750 N.E.2d 314, 318 (2001).

The Court begins, as it must, with the Policy. Under the coverage provision, Mid-Century must "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." R.1-1, Policy at 70.[2] "Covered Property" means "the buildings and structures at the premises described in the Declarations." *Id.* "Covered Causes of Loss" are "Risks of Direct Physical Loss unless the loss is: a. Excluded in Section B., Exclusions; or b. Limited in Paragraph A.4. Limitations . . . ." *Id.* at 71. It is undisputed that the Policy covers hail damage to the Property. *See* Answer ¶ 7. The Policy contains an Appraisal provision, which states:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent

---

[2] The Policy is not paginated, so the citations to it refer to the CM/ECF pagination in the header of the electronically filed document (e.g., "Page 70 of 172").

4

and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. . . .

Compl. ¶ 12; Policy at 83.

Under the plain language of the Policy, if the parties disagree as to the "amount of loss," either party may request an appraisal. Compl. ¶ 12; Policy at 83. B&D argues that when an insurer admits there is a covered loss, determining the extent and causation of the damage is part of the "amount of loss" determination and subject to the Appraisal clause; it is not a coverage dispute. Mot. J.P. at 5–6 (citing, among other cases, *Runaway Bay Condo. Ass'n v. Phila. Indem. Ins. Co.*, 262 F. Supp. 3d 599, 601–02 (N.D. Ill. 2017); *Adam Auto Grp., Inc. v. Owners Ins. Co.*, 2019 WL 4934597, at *2 (N.D. Ill. Oct. 7, 2019) ("To determine which damages . . . are pertinent to calculation of the amount of loss, an appraiser would necessarily need to distinguish between [causes of] damages."); *Spring Point Condo. Ass'n v. QBE Ins. Corp.*, 2017 WL 8209085, at *2–3 (N.D. Ill. Dec. 13, 2017) (holding that an appraisal was appropriate because the disparity in valuation between the parties was based on a disagreement as to the cause of the damage); *Phila. Indem. Ins. Co. v. Northstar Condo. Ass'n*, Case No. 15-cv-10798, at R. 34 (N.D. Ill. Oct. 18, 2016) ("Whether other damage was already present or occurred after the April 2014 storm are factors for the appraiser to take into consideration when making his assessment.")). B&D submits that these cases stand for the proposition that "causation is a coverage question for the court when an insurer *wholly denies* there is a covered loss, and an amount of loss question

5

for the appraisal panel when an insurer admits there is covered loss, the amount of which is disputed." *Id.* at 6 (emphasis in original).

Mid-Century, on the other hand, frames the dispute as whether damage to the roof was caused by hail or by wear and tear and deterioration. R. 21, Resp. at 4. It contends that, contrary to B&D's assertion, it has not "admitted" coverage for the hail damage, leaving only the outstanding issue of damages. *Id.* at 5. Rather, argues Mid-Century, it has acknowledged hail damage to the soft metal vents on top of the roof, but denies that the roof itself sustained hail damage. *Id.* at 6. Mid-Century asserts that under Illinois law, causation disputes are not subject to appraisal. *Id.* at 7 (citing, among other cases, *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905 (N.D. Ill. 2000); *Breckenridge Apartment Homes, LLC v. Greater N.Y. Mut. Ins. Co.*, 2016 WL 11700913, at *3 (N.D. Ill. Oct. 31, 2016)). As for the cases cited by B&D, Mid-Century argues that they are distinguishable as they all involved acknowledged disputes over the amount of loss, something which is absent here. *Id.* at 10–11.

The Court's task is to ascertain and give effect to the intent of the parties as expressed in the Policy. The language of the Policy is unambiguous: appraisal is available to resolve disagreements as to the "amount of loss." But the Policy does not define "amount of loss." The parties agree there is a covered hail loss to the metal vents on the roof of the Property amounting to $4,271.45. *See* Resp. at 1. However, Mid-Century maintains that any additional damage to the roof was due to an excluded cause (wear and tear and deterioration), and, therefore, a disagreement

6

exists as to whether the damage to the roof was caused by hail or by wear and tear. Resp. at 4–5. This factual dispute, reasons Mid-Century, dictates that B&D's motion be denied. *Id.* B&D, though, contends that the damage to the roof was also caused by the hail and that an appraisal should be conducted to resolve the disagreement as to the "amount of loss" from the hail. Mot. J.P. at 6. The Court agrees with B&D's interpretation of the Policy.

It is fundamental that a court, when interpreting a contract, does not reach absurd constructions of a contract. *See Holmes v. Godinez*, 991 F.3d 775, 783 (7th Cir. 2021) ("Illinois law requires that contracts must be construed to avoid absurd results . . . ."). Mid-Century does not argue that the Policy does not cover hail damage to the Property. To the contrary, Mid-Century has acknowledged that some portion of the Property was damaged by hail and therefore constitutes a covered loss. Resp. at 1. It insists, however, that not all of the alleged damage was caused by hail. *Id.* at 1–2. B&D posits that Mid-Century's argument is predicated on an unsupported definition of the term "Covered Property" that limits coverage to the Property's individual components. R. 22, Reply at 3. B&D points out that the Policy only requires loss or damage to the Building, not loss or damage to each individual building component, such as the roof. *Id.* The Court agrees with B&D that Mid-Century's position is untenable in light of the Policy's language.

Determining the cause and extent of damage to the Property is an inherent part of an appraisal to determine the amount of loss. While not dispositive, this very issue was addressed in *Adam Auto Grp.*, 2019 WL 4934597. In that case, the plaintiff

7

filed a claim with its insurer, the defendant, after fire damaged its property. *Id.* at *1. While the defendant paid $70,000.00 of the claim, the plaintiff disagreed that this amount covered all of its fire-related loss. *Id.* The plaintiff invoked the insurance policy's appraisal provision, arguing that the payment did not cover the full value of its fire-related loss because it understated the extent of the fire damage and the cost of repairing that damage. *Id.* In rejecting the defendant's argument that the plaintiff's request for an appraisal was a causation issue and not an amount of loss dispute, the district court found that the defendant's contention was based on the false premise that "the task of determining the value of damage can be meaningfully separated from the task of determining what caused the damage." *Id.* at *2 (quoting *Runaway Bay Condo. Ass'n*, 262 F. Supp. 3d at 601). As the district court explained, to determine which damages to the plaintiff's building were pertinent to the loss amount calculation, "an appraiser necessarily would have to distinguish between damages caused by the fire from those caused by other events or conditions like wear and tear." *Id.* The Court finds this reasoning persuasive.

Here, the initial determination by Mid-Century's investigator determined the amount of loss to the roof vents based on the fact that the damage was due to hail, but then ruled out any loss for the roof itself based on his view that the damage to the roof was caused by wear and tear and deterioration. *See* Resp. at 1. This analysis inherently involved causation determinations. To make this decision, the investigator had to distinguish between damage caused by hail from that caused by other events or conditions, such as wear and tear. As the district court noted in *Adam Auto Grp.*,

8

"courts have 'routinely' rejected the argument that issues that implicate damage causation are not appropriate for resolution by appraisal." 2019 WL 4934597, at *2 (citing *Runaway Bay Condo. Ass'n*, 262 F. Supp. 3d at 601). It therefore logically follows that the causation for all of the damage to the Property would be part of the amount of loss analysis by an appraiser.

## Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings on Count I [19] and directs the parties to engage in the appraisal process under the Policy's Appraisal provision to determine the amount of hail loss to the Property. This case is stayed pending the outcome of the appraisal. The Court directs the parties to file a joint status report on the status of the appraisal by February 11, 2022.

Dated: December 28, 2021

United States District Judge
Franklin U. Valderrama